# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF CHAD LOGAN, BY AND THROUGH PAULA LOGAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHAD LOGAN; | ) ) ) ) | |
| | ) | Case No. 4:21-cv-00416-RK |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THOMAS S BUSCH, MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, LLP, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) and Motion to Stay Discovery (Doc. 12). The motions are fully briefed. (Docs. 11, 23, 25, 28, 31.) For the reasons explained below, and after careful consideration, the Court **ORDERS** that (1) Defendants' motion to dismiss for improper venue and failing to state a claim (based on the statute of limitations) is **DENIED**, and (2) Defendants' motion to stay discovery is **DENIED**.

As to Defendants' motion to dismiss for lack of personal jurisdiction, this is a difficult case. Plaintiff seeks to establish personal jurisdiction by Missouri courts over Defendants, an individual attorney and a law firm, for their representation of an individual (at the time, a Kansas resident and whose estate Plaintiff represents) in a Kansas legal matter that, due to Defendants' alleged legal malpractice, negatively affected the individual's interest and right in a trust governed by Missouri law. Plaintiff's legal malpractice claim rests on positive acts (erroneous legal advice and the filing of a lawsuit in Kansas) and an omission (doing so without first testing the potential effects of the lawsuit under a procedure allowed by Missouri law concerning Missouri trusts). While the Court finds the out-of-state law firm has sufficient minimum contacts with Missouri for personal jurisdiction to satisfy the Due Process Clause, the Court does not find the same is true for the out-of-state attorney's contacts with Missouri while representing the former client. For the reasons explained below, defendants' motion to dismiss for lack of personal jurisdiction is **DENIED** as to Martin, Pringle, Oliver, Wallace & Bauer, LLP, and is **HELD** as to Thomas S. Busch pending the

parties' supplemental briefing on whether transfer of this case under 28 U.S.C. § 1404(a) is appropriate (as ordered in § IV below).

## Background

This lawsuit arises from Thomas S. Busch ("Attorney Busch") and Martin, Pringle, Oliver, Wallace & Bauer, LLP's ("Firm") representation of Chad Logan (now deceased) in 2015 and 2016. Originally filed in the Circuit Court of Jackson County, Missouri, Defendants removed the Complaint to this Court on June 15, 2021, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] Plaintiff filed an Amended Complaint on July 13, 2021. (Doc. 9.)

In the Amended Complaint, Plaintiff alleges that Mr. Logan was the beneficiary of several significant trusts established by his grandparents. These trusts were created under and governed by Missouri law. (Doc. 9 at 4, ¶ 17 & 5, ¶ 18.) Around 2014 or 2015, the Trustees suspended distributions to Mr. Logan when he stopped taking his medications and receiving professional help for his mental illness. (*Id.* at 5, ¶ 24 & 6, ¶ 26.) The Trustees had determined that receiving trust assets while not treating his mental illness was not in Mr. Logan's best interest. (*Id.* at 6, ¶ 26.)

In 2015, Mr. Logan hired Attorney Busch, then a partner at the Firm, to represent him concerning the suspension of his trust benefits. During the time Defendants represented Mr. Logan, Mr. Logan resided in the State of Kansas. (Doc. 11-1 at 3.) Attorney Busch, licensed to practice law in both Kansas and Missouri, practiced out of the Firm's Overland Park, Kansas, office location. (*Id.*; Doc. 9 at 4, ¶ 14.) Attorney Busch and others from the Firm only met with Mr. Logan at the Overland Park office and communicated with Mr. Logan only from the Overland Park office. (Doc. 11-1 at 2.) The Firm also maintains an office in Kansas City, Missouri, and advertises and performs legal services in Missouri. (Doc. 9 at 3-4, ¶ 13.)

While representing Mr. Logan, Attorney Busch attended two meetings with the Trustees and Trustees' counsel at the Kansas City, Missouri, office of Trustees' counsel prior to any litigation being filed. (Doc. 9 at 7, ¶ 30 & 9, ¶ 39.) Trustees' counsel informed Attorney Busch at both meetings about a "no-contest" provision in the applicable trusts. (*Id.* at 12, ¶¶ 48-49.)

---

[1] In removing this case pursuant to diversity jurisdiction, Defendants alleged Mr. Logan was a resident and citizen of Missouri at the time of his death and that the Firm and Attorney Busch are residents of Kansas (where the Firm is both incorporated and has its principal place of business). Although Plaintiff initially filed a motion to remand, the motion was later withdrawn. (Docs. 7, 20.) At this point, the parties do not dispute that federal subject matter exists under the Court's diversity jurisdiction; the Court does find any reason to hold otherwise.

2

Under this provision, a trust beneficiary's rights would be forfeited if the beneficiary instituted proceedings to challenge the validity of the trusts or the Trustees' discretion in distributing the trust benefits. Defendants consulted with a Missouri law professor, Professor David English, to provide advice as to the enforceability of the no-contest provisions in the trusts. (Docs. 11-1 at 2; 9 at 4, ¶ 15 & 12, ¶¶ 51-53.) Defendants communicated with Professor English by telephone or email all while Attorney Busch was physically located in Kansas. (Doc. 11-1 at 3.) Professor English advised Defendants that no-contest provisions were generally enforced but that Missouri had a "safe harbor" procedure through which a person could test a particular claim or action against a no-contest provision in a trust by filing a petition to determine whether the claim or action would violate the trust provision. (Doc. 9 at 13, ¶ 55.) Professor English advised Defendants that pursuing a "safe harbor" action would eliminate the risk a court could later decide that a contemplated lawsuit, if ultimately pursued, violates a no-contest provision.

Defendants ultimately advised Mr. Logan that filing a lawsuit in Kansas state court under Kansas law accusing the Trustees of conspiring against him with an evil motive not related to a genuine concern for his health and well-being did not violate the no-contest provisions in the trusts. (Docs. 9 at 12, ¶ 50; 25-1 at 42.) In April 2016, Defendants filed a lawsuit in the District Court of Johnson County, Kansas ("Kansas Lawsuit"). (Docs. 11-1 at 3; 9 at 11, ¶ 44.) Defendants did not pursue a "safe harbor" action under Missouri law before doing so. (Doc. 9 at 13, ¶ 55.) A few months after filing the Kansas Lawsuit, Defendants withdrew from their representation of Mr. Logan. (Doc. 11-1 at 3.) In December 2016, the Kansas Lawsuit was dismissed with prejudice, in favor of the Trustees. (Doc. 9 at 14, ¶ 61.)

Two years later, in 2018, the Trustees filed a declaratory judgment action in Kansas state court seeking a ruling whether the Kansas Lawsuit violated the no-contest provisions within the trusts. (*Id.* at ¶ 62.) At trial, Mr. Logan argued that the Kansas Lawsuit did not violate the no-contest provisions. (*Id.* at 9-10, ¶ 63.) Ultimately, however, the Kansas state district court entered its judgment on May 18, 2018, finding that the Kansas Lawsuit *did* violate the trusts' no-contest provisions and that, as a result, Mr. Logan forfeited any interest in the trusts. (*Id.* at 15-16, ¶¶ 67-69.) By this time, Mr. Logan was living in Missouri. (*Id.* at 16, ¶ 70.)

Mr. Logan died on March 11, 2021. (*Id.* at ¶ 73.)

Plaintiff, Mr. Logan's estate, now asserts a claim of legal malpractice and negligence against Defendants. Specifically, Plaintiff alleges that Defendants: (1) wrongly advised Mr.

Logan that the Kansas Lawsuit would not violate the no-contest provisions in the trusts, and (2) filed the Kansas Lawsuit against the Trustees without first testing the claims against the no-contest provisions as permitted by Missouri law and as Professor English had advised. Plaintiff alleges because of Defendants' breach of their duties to Mr. Logan, Mr. Logan was declared on May 18, 2018, to have violated the no-contest provisions and thus to have forfeited any interest in the trusts.

Defendants argue that Plaintiff's Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(2) (lack of personal jurisdiction), (b)(3) (improper venue), and (b)(6) (failure to state a claim upon which relief can be granted based on the statute of limitations). Plaintiff opposes Defendants' motion to dismiss.

## Standard of Review

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (citation and quotation marks omitted).

## Discussion

### I.  Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). If the defendant challenges jurisdiction, the burden is on the plaintiff to present facts supporting jurisdiction. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012). The court views the evidence in the light most favorable to the plaintiff and resolves factual conflicts in plaintiff's favor in determining whether plaintiff has made a prima facie showing of personal jurisdiction over the challenging defendant. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff's "prima facie showing" is tested by the pleadings as well as by the affidavits and exhibits submitted in connection with the motion. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004); *see Fastpath, Inc.*, 760 F.3d at 820.

Personal jurisdiction can be specific or general. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (citations and internal quotation marks omitted). As the United States Supreme Court recently affirmed, "[t]he primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017) (citations omitted).

Specific jurisdiction "requires a relationship between the forum, the cause of action, and the defendant." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) (citation omitted); *accord Bristol-Myers Squibb*, 137 S. Ct. at 1780 (for specific jurisdiction, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*") (citation and internal quotation marks omitted). This relationship exists "when the defendant purposely directs its activities in the forum state and the litigation results from injuries relating to the defendant's activities in the forum state." *Myers*, 689 F.3d at 912–13 (citation and internal quotation marks omitted). The relationship between a defendant's contacts and the cause of action is not restricted to a proximate cause standard but should take into account the "totality of the circumstances." *Id.* (quoting *K-V Pharm. Co. v. J Uriach & CIA, S.A.*, 648 F.3d 588, 592-93 (8th Cir. 2011)). Nonetheless, however, without a connection between the forum state and the claim, there is no specific jurisdiction over a defendant notwithstanding the magnitude of defendant's unconnected activities in the forum state. *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

The exercise of specific jurisdiction is appropriate only if authorized by a forum states' long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment. *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010); *see also Dairy Farmers of Am., Inc.*, 702 F.3d at 475-76. Missouri's long-arm statute, in relevant part, extends jurisdiction "as to any cause of action arising from the doing of any such acts" including (1) "[t]he transaction of any business within this state" or (2) "[t]he commission of a tortious act within this state." Mo. Rev. Stat § 506.500. "Missouri's long-arm statute . . . has long been interpreted to authorize the exercise of jurisdiction over non-residents to the extent permissible under the Due Process Clause." *Creative Compounds, LLC v. Lott & Friedland, P.A.*, No. 1:10CV000025 SNLJ, 2010 WL

1854058, at *2 (E.D. Mo. May 7, 2010) (citing *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Wiesman*, 627 S.W.2d 874, 876 (Mo. banc 1982); *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000)). "Thus, the critical factor . . . is whether the exercise of personal jurisdiction in this case comports with due process." *Clune*, 223 F.3d at 541; *see also Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020) (where the state long-arm statute has been interpreted to "exercise jurisdiction to the full extent of the Due Process Clause," the "two-part inquiry is merged into a single question: would requiring the defendants to litigate this case in [Missouri] offend due process"?) (citation omitted); *Austin v. Downs, Rachlin & Martin*, No. 4:05CV800 SNL, 2006 WL 355261, at *2 (E.D. Mo. Feb. 15, 2006).

For the exercise of specific personal jurisdiction over an out-of-state defendant, due process requires the out-of-state defendant have sufficient contacts with the forum state so that the exercise of jurisdiction over the out-of-state defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted). Generally, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts." *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 881 (2011) (plurality opinion). This "minimum contacts" or due process inquiry has been distilled to consider whether an out-of-state defendant has "warning that his activities may result in his being haled into court in a particular jurisdiction," particularly through the defendant having "invoke[d] the benefits and protections of that jurisdiction by purposefully availing himself of the privilege of conducting those activities [in the forum state]." *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002) (citation omitted); *accord K-V Pharm. Co.*, 648 F.3d at 592. In this way, the foundation for specific jurisdiction, consistent with due process, is "a nexus between the forum state itself, the defendant, and the cause of action." *Lawhead v. Law Offices of Joseph Martin Carasso*, 482 F. Supp. 3d 867, 872 (D. Minn. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). The out-of-state defendant and the forum state must be "substantial[ly] connect[ed]" for the exercise of the forum state's jurisdiction to satisfy due process. *Porter*, 293 F.3d at 1075-76 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

A defendant's minimum contacts with the forum state "must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Johnson v. Woodcock*, 444 F.3d 953, 955-56 (8th Cir. 2006) (quoting *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)).

6

To evaluate whether a defendant has sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment, the Eighth Circuit has established the following five factors courts should consider: (1) the nature and quality of a defendant's contacts with the forum state, (2) the quantity of a defendant's contacts with the forum state, (3) the relation of the cause of action to the contacts with the forum state, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Dever*, 380 F.3d at 1073-74. The first three factors bear significant weight in the jurisdictional analysis. *Id.* at 1074.

In sum, to establish specific jurisdiction, Plaintiff must set forth facts to show that Defendants "ha[ve] purposefully directed [their] activities at Missouri residents, and [that] the claim of this suit either 'arises out of' or 'relates to' these activities" in a manner that satisfies due process. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (citation and other quotation marks omitted).

## A. Multiple Defendants

In analyzing personal jurisdiction in this case, as a general rule, the Court must separately consider the forum-state contacts of each defendant. *Hand v. Beach Entm't KC, LLC*, 425 F. Supp. 3d 1096, 1107 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). As the Supreme Court has recognized, "[t]he requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Notably, Plaintiff does <u>not</u> argue *if* the Court has personal jurisdiction as to the Firm, personal jurisdiction also exists as to Attorney Busch because of his status as a partner at the time he represented Mr. Logan.[2] Indeed, courts in this circuit have recognized, "while the actions of an agent may support personal jurisdiction over the principal, the actions of a principal cannot be used to support personal jurisdiction over an agent." *MNG 2005, Inc. v. Paymentech, LLC*, No. 4:18-cv-01155-JAR, 2020 WL 6582660, at *4 (E.D. Mo. Nov. 9, 2020). Courts in this circuit have reasoned, "while a partnership may be subject to jurisdiction on the basis of its partners' contacts with the forum, a partner cannot be subject to personal jurisdiction solely by virtue of the contacts of the partnership. Instead, jurisdiction over individual partners depends solely on each partner's relationship with the forum." *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 960 (D. Minn. 2000) (citing *Ytuarte v. Gruner + Jahr Printing & Publ'g Co.*, 935 F.2d 971, 972-73 (8th Cir.

---

[2] And, notably, it appears Attorney Busch is no longer a partner at the Firm.

1991); *Sher v. Johnson*, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (itself citing *Rush v. Savchuk*, 444 U.S. 320, 321-32 (1980))); *see also RCI Contractors & Eng'rs, Inc. v. Joe Rainero Tile Co., Inc.*, 666 F. Supp. 2d 621, 624 (W.D. Va. 2009); *Guy v. Layman*, 932 F. Supp. 180, 183 (E.D. Ky. 1996). Plaintiff does not argue, however, in this case that, to the extent personal jurisdiction may be exercised over the Firm, due process permits personal jurisdiction as to Attorney Busch solely because he was a partner in the law firm at the time he (and the Firm) represented Mr. Logan. Accordingly, the Court considers each defendant's contacts with the forum-state (Missouri) separately.

### B. The Firm

Plaintiff argues Missouri courts have both general and specific jurisdiction over the Firm. Specifically, Plaintiff pleads the law firm is registered to do business and does perform legal services in Missouri, that it has an office in Kansas City, Missouri, and that the law firm's "website advertises that its expansion into Missouri 'solidified the Firm as a regional law firm with the ability to handle matters efficiently and effectively throughout Kansas and Missouri.'" (Doc. 9 at 3-4, ¶¶ 9 & 13.) Defendants argue these facts are not relevant to specific jurisdiction because "they have no connection to Chad Logan, Defendants' representation of Chad Logan or the events giving rise to the cause of action alleged in the Amended Complaint." (Doc. 11 at 9.)

The Court first addresses whether Missouri has specific jurisdiction as to the Firm. As recognized above, "[s]pecific jurisdiction, unlike general jurisdiction, requires a relationship between the forum [state], the cause of action, and the defendant." *Myers*, 689 F.3d at 912 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In other words, specific jurisdiction requires that "'the litigation results from alleged injuries that arise out of or relate to'" the activities purposefully directed at residents of the forum state. *Id.* (quoting *Burger King*, 471 U.S. at 472). The Eighth Circuit has held this requirement does not mean the out-of-state defendant's forum contacts must be the proximate cause or even the "but for" cause of a plaintiff's injuries, but it is sufficient "the [out-of-state] defendant purposely directs its activities at the forum state and the litigation results from injuries relating to the defendant's activities in the forum state." *Id.* at 912-13 (rejecting the "proximate cause" standard).

In *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), the Supreme Court recently held, similarly, specific jurisdiction does not reuqire strict causation:

. . . Ford's causation-only approach [that specific jurisdiction "attaches only if the defendant's forum conduct *gave rise* to the plaintiff's claims"] finds no support in this Court's requirement of a "connection" between a plaintiff's suit and a defendant's activities [in the forum state]. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. None of our precedents have suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As noted, our most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support a jurisdiction without a causal showing. . . . [W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation – *i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct.

*Id.* at 1026 (citations omitted). In *Ford*, the Supreme Court recognized, generally, that "specific jurisdiction attaches in cases identical to the ones here – when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027. Thus, the Supreme Court held that Ford was subject to specific jurisdiction in Montana and Minnesota; states wherein Ford had "systematically served [in the] market . . . for the very vehicles that the plaintiffs allege malfunctioned and injured them in those states." *Id.* at 1028. Personal jurisdiction was satisfied, then, even though the specific cars involved were sold outside the forum states (in other words, where Ford's forum-state contacts did not directly give rise to the plaintiffs' claims). *Id.*

At the same time, though, the Supreme Court did recognize "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants to a forum." *Id.* at 1026; *see also id.* at 1034 (J. Gorsuch, concurring) ("For a case to 'relate to' the defendant's forum contacts, the majority says, it is enough if an 'affiliation' or 'relationship' or 'connection' exists between them.").

At least one district court has explored the outer limits of the term "relate to" for purposes of specific jurisdiction as emphasized in *Ford Motor Co*. in the context of a legal malpractice claim. In *Harriman v. Compton*, No. 2:21-cv-1102-DCN, 2021 WL 2667062 (D.S.C. June 29, 2021), the plaintiff (a Texas investment banker and advisor with a Texas corporation) sued defendants (a Texas lawyer and Texas law firm) for legal malpractice arising from defendants' representation of plaintiff in Texas litigation that arose from events that occurred in Texas. *Id.* at *1. The plaintiff filed suit in the state court of South Carolina but was removed to the District Court for the District of South Carolina. *Id.* at *2. Defendants argued the district court lacked

9

personal jurisdiction. The court agreed. The district court applied the rule from *Ford Motor Co.* that a plaintiff need only show a defendant's out-of-state contacts in the forum state "relate to" the plaintiff's claim, in light of the requirement that "[a]t bottom, specific jurisdiction requires a direct, meaningful connection between the defendant's form-state contacts and the plaintiff's claim." *Id.* at \*4 (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1781). Key to this inquiry, the district court noted, were the quality and nature of the defendant's contacts with the forum state. *Id.*

Under this framework the Court reasoned that the defendant-lawyer's scheduling two depositions and agreeing to defend a third within South Carolina failed to establish personal jurisdiction because plaintiff "fail[ed] to demonstrate how her [legal malpractice] claims arise from or relate to this single South Carolina contact." *Id.* at \*5.

> . . . Each of the depositions related to Palmaz's motion for temporary injunction, which alleged under the Texas Uniform Fraudulent Transfers Act ("TUFTA") that [plaintiff] was fraudulently transferring assets to protect them from a potential judgment. Harriman argues that these depositions "affected the defense of the TUFTA action and the case in general." But Harriman fails to explain how these depositions actually "relate to" her claims. Harriman's complaint in this action makes clear that her claims arise from two allegedly negligent acts: first, the defendants' agreement to the temporary restraining order without obtaining Harriman's informed consent, and second, defendants' disclosure of the allegedly privileged email between Harriman and Theos. There is no allegation in the complaint that [defendants] w[ere] negligent in [their] handling of the Charleston depositions or that the Charleston depositions relate to Harriman's claims at all . . . Harriman plainly fails to connect any dots between her claims and the Charleston depositions[.] In other words, Harriman has not demonstrated that the Charleston depositions "relate to" her claims.

*Id.* (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("What is needed – and what is missing here – is a connection between the forum and the specific claims at issue.")) (other citations including record citations omitted).

Here, Plaintiff's claim of legal malpractice alleges Defendants (1) erroneously advised Mr. Logan that the Kansas Lawsuit would not violate the no-contest provisions, a matter under Missouri law, and (2) filed the Kansas Lawsuit without first testing it under Missouri's "safe-harbor" procedure, of which they had been made aware.

Plaintiff sets forth facts that on its website, the Firm advertises itself as a "regional law firm" that provides legal services in "Kansas and Missouri." (Doc. 25-1 at 8.) The law firm's website lists a Kansas City, Missouri, office location with a Missouri phone number, and identifies

several attorneys as connected to Kansas City, Missouri. (*Id.* at 10, 12, 14.) Defendants do not contest that the Firm purposely directed its activities at Missouri and actively targeted Missouri residents in its provision of legal services. As *Ford* instructs, it is clear the Firm's contacts with Missouri – providing legal services to Missouri residents and purposely availing itself of the market for legal services in Missouri – are "related to" Plaintiff's legal malpractice claim here. In *Ford* the "related to" standard was satisfied where the out-of-state defendant sold the same model car in the forum states that were involved in the products liability action, even if the specific cars involved were sold to the forum-state resident outside the forum state. Plaintiff's legal malpractice claim thus relates to the Firm's Missouri contacts in the same way: based upon the Firm's advice as to issues involving Missouri law. Unlike *Harriman* where the legal malpractice claim did not involve the proceedings that occurred in the forum state, here Plaintiff's legal malpractice claim encompasses advice on issues governed by Missouri law and the Firm's purposeful presence in the Missouri legal services market targeting Missouri residents certainly involves legal advice as to issues of Missouri law. Based on the Firm's Missouri contacts, it could reasonably expect being haled into Missouri courts regarding the legal advice and legal services its attorneys provide, particularly concerning issues directly or collaterally involving Missouri law and procedure.

Because of the broad nature of Plaintiff's legal malpractice claim[3] asserted in this case, the Court finds, consistent with *Ford*, the claim is related to the Firm's Missouri contacts. That Mr. Logan was a Kansas resident contemplating a Kansas Lawsuit brought under Kansas state law against the Trustees does not require a different result here. Defendant's argument that the Firm's Missouri contacts are not directly tied to the allegedly negligent advice and actions Mr. Logan received is unavailing because to accept this argument would be to apply a stringent "but for" or "proximate cause" standard that, after *Ford*, does not apply here.

Accordingly, the Court finds that the nature, quantity, and quality of the Firm's contacts with Missouri weigh in favor of personal jurisdiction, that these contacts are related to Plaintiff's legal malpractice claim under the direction provided in *Ford*, and that the Firm has sufficient

---

[3] Plaintiff's legal malpractice claim in this case is somewhat unique and, contrary to each parties' characterization, not a straightforward matter involving a solely "Kansas" or a solely "Missouri" claim. The specific professional acts on which Plaintiff's legal malpractice claims rests – providing legal advice to Mr. Logan and filing the Kansas Lawsuit – occurred within Kansas and under Kansas law. At the same time, Plaintiff's legal malpractice claim also rests on the omission (or failure to act) under the safe-harbor provision provided by Missouri law prior to filing the Kansas Lawsuit and Defendants' allegedly negligent advice as to issues governed by Missouri law.

11

minimum contacts that the exercise of specific jurisdiction satisfies due process. Having so concluded, the Court must consider the final two factors: the interest of Missouri in providing a forum and the convenience or inconvenience to the parties. *See K-V Pharm. Co.*, 648 F.3d at 592. Missouri has an easily cognizable interest in providing a forum for its residents (Mr. Logan was a resident of Missouri at the time he passed away) to seek redress for harm suffered as a result of legal malpractice and negligent advice, including that as to Missouri law. Even considering that at the time the legal advice and representation was provided, the Firm represented the interests of a Kansas resident, because the interests involved included beneficiary interests in trusts governed by Missouri law and involved issues of Missouri law, Missouri has a cognizable interest here in providing a forum. Finally, while it appears the Firm is both incorporated in and has its principal place of business in Kansas, Defendant presents no argument that this forum is otherwise inconvenient or burdensome. Considering that the Firm maintains an office in Kansas City, Missouri, and has apparently done so for several years and otherwise regularly provides legal services in Missouri, the Court does not find this forum is otherwise inconvenient or burdensome.[4]

Therefore, Defendants' motion to dismiss for lack of personal jurisdiction as to the Firm is **DENIED**.[5]

---

[4] The Court recognizes, as stated above, Missouri's long-arm statute has been interpreted to extend to the full extent permitted under the Due Process clause. To the extent Defendants argue Missouri's long-arm statute is not satisfied here, the Court does not find that argument availing. Section 506.500 RSMo, provides for personal jurisdiction over a non-resident defendant that has committed a tortious act within the state as to any cause of action arising from the doing of any of such acts. "Missouri courts have interpreted subsection (3) [of section 506.500] to include 'extraterritorial acts of negligence producing actionable consequences in Missouri.'" *Myers*, 689 F.3d at 910 (quoting *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. banc 1987)). Jurisdiction is authorized where "a defendant can reasonably foresee his or her negligent actions having consequences felt in Missouri[.]" *Id.* at 911; *see also State ex rel. Wichita Falls Grp. Hosp. v. Adolf*, 728 S.W.2d 604, 606 (Mo. Ct. App. 1987). Whether or not the Firm's representation of Mr. Logan physically occurred only in Kansas, Plaintiff alleges the Firm's representation constituting legal malpractice produced a foreseeable consequence in Missouri – inasmuch as the result of the Firm's alleged malpractice was the forfeiture of Mr. Logan's beneficiary interests in trusts governed by Missouri law. The Court concludes Plaintiff has otherwise demonstrated Missouri's long-arm statute is itself satisfied as to the Firm.

[5] Because the Court finds Missouri can properly exercise specific jurisdiction as to the Firm, the Court need not consider Plaintiff's argument that Missouri has general jurisdiction over the law firm. Plaintiff's argument otherwise does not appear to bear much persuasive value, nonetheless, because the Firm is both incorporated in and has its principal place of business in Kansas. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139, n.19 (2014); *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 927-28 (2011); *Neeley v. Wyeth LLC*, No. 4:II-cv-00325-JAR, 2015 WL 1456984, at *3 (E.D. Mo. Mar. 30, 2015).

### C.   Attorney Busch

In considering Defendant Attorney Busch's more limited contacts with Missouri (as Plaintiff argues, limited to the time-period during which he represented Mr. Logan) the Court finds the exercise by Missouri of specific jurisdiction as to Attorney Busch, an out-of-state defendant, does not comport with due process.

As explained below, the Court finds the first three factors in the jurisdictional analysis (the nature, quality, and quantity of Attorney Busch's contacts with Missouri and the relationship of those contacts to Plaintiff's legal malpractice claim) weigh against the exercise of specific personal jurisdiction in this case.[6] While Attorney Busch is licensed to practice law in both Kansas and Missouri, he attests that throughout his representation of Mr. Logan (at all times during the representation was a Kansas resident) he practiced law and advised Mr. Logan only within the State of Kansas. Moreover, Attorney Busch emphasizes he represented Mr. Logan, a Kansas resident, surrounding a lawsuit brought in Kansas state courts under Kansas state law against the Trustees[7] when Mr. Logan's benefits under the trust were suspended. To demonstrate sufficient minimum contacts with Missouri, Plaintiff relies on Attorney Busch's attendance at two meetings that were held in Missouri with Trustees' counsel prior to the filing of the Kansas Lawsuit, that Attorney Busch held a Missouri law license, that Attorney Busch contacted a Missouri-based legal expert, and that Attorney Busch advised (allegedly erroneously and negligently) on issues of Missouri law (particularly, that the Kansas Lawsuit would not violate the no-contest provisions in the trusts and by failing to test the Kansas Lawsuit under an otherwise available safe-harbor provision under Missouri law prior to filing it).

An out-of-state defendant's minimum contacts to a forum state must rest upon "the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285 (citing *Int'l Shoe Co.*, 326 U.S. at 319 (Due process "does not contemplate that a state may make a binding judgment *in personam* against an individual . . . with which <u>the state</u> has no contacts, ties, or relations") (other citation omitted) (emphasis added)).

---

[6] Plaintiff does not argue Missouri courts have general jurisdiction over Attorney Busch, nor does it appear they could since it appears Attorney Busch is domiciled in Kansas.

[7] While the trusts themselves appear to be governed by Missouri law, the limited record at this point does not indicate whether the Trustees are Missouri residents or not. Plaintiff does not attempt to argue the filing of the Kansas Lawsuit against the Trustees itself is a minimum contact with Missouri for jurisdictional purposes and sets forth no facts establishing the residency of the Trustees themselves.

Thus, the Eighth Circuit has held that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Porter*, 293 F.3d at 1076 (citation omitted); *accord Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) ("telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there'") (citation omitted). Additionally, an out-of-state defendant's contacts with the forum State must not be only "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted); *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984) (holding that "regular monthly sales of thousands of magazines" were not random, isolated, or fortuitous contacts between the defendant, an out-of-state individual and corporation and the forum state to extend specific jurisdiction consistent with due process).

Here, Plaintiff relies only on fortuitous and attenuated contacts Attorney Busch had with Missouri, in the specific context of this cause of action for legal malpractice. The crux of Plaintiff's claim against Attorney Busch is that Attorney Bush erroneously advised Mr. Logan that filing the Kansas Lawsuit would not violate the no-contest provisions in the trusts and negligently filed the Kansas Lawsuit without taking advantage of, as Plaintiff contends, an available "safe-harbor" mechanism under Missouri law of which Attorney Busch was otherwise aware. Unlike the Firm whose contacts with Missouri extend beyond its representation of Mr. Logan (including an office in Missouri and advertising and targeting directed toward potential clients residing in Missouri), the only Missouri contacts Plaintiff alleges as to Attorney Busch occurred during Attorney Busch's representation of Mr. Logan – a Kansas resident in a Kansas legal matter that collaterally implicated Mr. Logan's beneficiary interests in trusts governed by Missouri law. In this context, Attorney Busch's contacts with Missouri are too fortuitous and attenuated when viewed in context of this subsequent legal malpractice action.

In the course of representing Mr. Logan, Attorney Busch attended two meetings in Kansas City, Missouri, with Trustees' counsel. None of Plaintiff's claim of legal malpractice are directly tied to these meetings, however, as at most Plaintiff argues it was through these meetings Attorney Busch was told about the no-contest provisions of the trusts. *See also Harriman*, 2021 WL 2667062 at *5. That these two pre-litigation meetings occurred in Missouri seem to be nothing more than a matter of convenience for Trustees' counsel (at whose office the meetings were held). *See Dalton ex rel. Estate of Meadors v. Ferris*, No. 5:19-215-DCR, 2019 WL 5581338, at *4 (E.D.

Ky. Oct. 29, 2019) (plaintiffs failed to establish minimum contacts with Kentucky of Pennsylvania attorneys based on two meetings in Kentucky defendant-attorneys had with plaintiffs in which defendant-attorneys updated the plaintiff on the status of the Texas lawsuit in which they were representing plaintiffs and solicited legal fees from plaintiff); *see also Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871 (11th Cir. Jan. 31, 2018) (litigation meeting, a deposition, and initial contact between the client and Florida lawyer with Florida law firm, in context, was fortuitous and attenuated in the context of the lawyer's multi-year representation of clients in New York case, even with regular communication by phone, email, and fax, not sufficient minimum contacts for exercise of personal jurisdiction by Georgia courts). And even though Attorney Busch was told about the no-contest provisions at these meetings, this information itself does not give rise to Plaintiff's legal malpractice claim, but rather it was Attorney Busch's advice to Mr. Logan and ultimately filing the lawsuit (albeit without testing the Kansas Lawsuit against the no-contest provisions as permitted under Missouri law) that ultimately gives rise to Plaintiff's claim here. Personal jurisdiction over an out-of-state defendant must rest on the defendant's contacts with the forum state, "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285 (citation omitted).

In the same way, Attorney Busch's contact with a Missouri-based legal expert (whether concerning issues of Missouri law or otherwise) does not add to a finding of substantial minimum contacts that would support the exercise of specific jurisdiction in Missouri that comports with due process. *See id.* at 286 ("[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State . . . [not] by interacting with other persons affiliated with the State") (citation omitted); *Porter*, 293 F.3d at 1076 (numerous phone calls and letters by out-of-state defendant to in-state plaintiffs does not, under due process principles, permit exercise of personal jurisdiction). Attorney Busch attests that all his communication with the law professor (and with Mr. Logan, his Kansas-resident client for that matter) occurred while Attorney Busch was physically within the State of Kansas. Plaintiff presents no other facts to establish that Attorney Busch communicated with or contacted Professor English in any manner that would establish sufficient minimum contacts with Missouri to support the exercise of personal jurisdiction.

Finally, Plaintiff relies in broad fashion that Attorney Busch, in addition to his license to practice law in Kansas (where Attorney Busch attests his legal representation of Mr. Logan

occurred and, of course, where the critical acts underlying Plaintiff's legal malpractice action – the filing of the Kansas Lawsuit – occurred[8]) also holds a Missouri law license. Plaintiff alleges, without providing facts, Attorney Busch "performed legal services" and "conducted business" in Missouri. As noted, though, Attorney Busch attested he advised Mr. Logan and did legal work for Mr. Logan only while within Kansas. Plaintiff provides no other facts in support other than the two pre-litigation meetings held in Kansas City, Missouri, which are too attenuated in the context of this case to provide the sufficient minimum contacts. The mere fact Attorney Busch held a Missouri law license does not provide the sufficient minimum contact to Missouri as the forum state in the context of this case.

In support of the proposition that Attorney Busch's law license is sufficient minimum contacts to satisfy due process, Plaintiff relies on *Independent Marketing Group, Inc. v. Keen*, No. 3:11-cv-447-J-25MCR, 2011 WL 13141025 (M.D. Fla. Aug. 17, 2011). There, a case removed to federal court in Florida from state court, the plaintiff (with its principal place of business in Florida) brought suit, in part, for legal malpractice against an out-of-state defendant-attorney who held a Florida law license. *Id*. at *3. The plaintiff had hired the defendant-attorney to represent it in legislative matters in Georgia as well as legal matters in Florida. *Id*. at *5. The district court held that "[a]s an attorney licensed in Florida, representing the interests of a Florida-based corporation, it is such that Defendant Megna availed himself to Florida's laws and could reasonably anticipate being haled into court in Florida." *Id*.; *see id*. at *6 (noting that "Defendant [Megna] is licensed to practice law in Florida and was representing the interests (albeit non-legal interests according to Defendant Megna) of a Florida-based company"). Attorney Busch is licensed to practice law in Missouri and Kansas. Unlike *Keen*, though, Attorney Busch did not provide legal services to a Missouri resident.[9] At most, Attorney Busch represented a Kansas resident (with advice and legal work when he was physically within Kansas) in the context of a Kansas lawsuit pursued and made under Kansas state law against certain individuals as Trustees of a trust governed by Missouri law

---

[8] It is also significant that the default judgment action the Trustees filed against Mr. Logan following the Kansas Lawsuit, which is a necessary component giving rise to Plaintiff's legal malpractice claim, was filed by the Trustees in Kansas state court.

[9] Plaintiff does not argue, similar to the Firm, Attorney Busch otherwise has a regular law practice in Missouri or with Missouri-based clients. The Missouri contacts on which Plaintiff relies to support personal jurisdiction in Missouri as to Attorney Busch are only those Missouri contacts discussed above that occurred while Attorney Busch represented Mr. Logan (who, it bears repeating, was a Kansas resident for the entire duration of that representation).

that collaterally involved Mr. Logan's interests in the trust.[10] This Kansas Lawsuit did not directly involve the Missouri trust itself, although as Plaintiff now alleges, Attorney Busch's negligent and erroneous legal representation in this matter later implicated Mr. Logan's interest in the trust governed by Missouri law. Nor does this legal malpractice claim somehow directly rest on the subsequent default judgment action filed by the Trustees against Mr. Logan (in Kansas state court) that directly involved the interpretation and application of Missouri trust law. Were this so, the claim of legal malpractice would be even more closely and directly tied to the Missouri trust such that the jurisdictional analysis may be swayed differently. But this is not that case. Instead, this case rests on Attorney Busch's representation and legal advice in the context of the contemplated Kansas Lawsuit, inasmuch as he advised Mr. Logan the Kansas Lawsuit would not violate the no-contest provisions in the trusts and ultimately filed the Kansas Lawsuit.

As other district courts have recognized, "membership in a state Bar does not have any impact on the jurisdictional analysis. It is the actual practice of a profession and not the possession of the right to practice that brings a person within the jurisdiction of a court." *Beach TV Props., Inc. v. Solomon*, No. 15-1823 (RC), 2016 WL 6068806, at *8 (D.D.C. Oct. 14, 2016) (holding that defendant's license to practice law in the District of Columbia does not, alone, subject the defendant to the jurisdiction of D.C. courts, rather "Plaintiff's argument only holds water if [the defendant] was actually practicing with his District of Columbia license") (citing *Ghanem v. Kay*, 624 F. Supp. 23, 25 (D.D.C. 1984)) (other citations and internal quotation marks omitted) (emphasis added); *see also Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp. 2d 648, 659 (S.D.N.Y. 2013) (that defendant maintained an active New York law license, alone, does not establish personal jurisdiction when the plaintiff's claims relate to actions the attorney took in New

---

[10] Again, there is no question Mr. Logan later became a Missouri resident after Attorney Busch had stopped representing him. Indeed, by his doing so and because Mr. Logan was domiciled in Missouri when he passed away, this Court now sits in diversity jurisdiction in this removal action that was originally filed in Missouri state court. While not argued by the parties, the Court notes it does not matter in the context of this case where Mr. Logan resided when he ultimately felt the effects of Attorney Busch's alleged negligence for purposes of this jurisdictional analysis. The "effects test" for purposes of establishing personal jurisdiction set out in *Calder v. Jones*, 465 U.S. 783, 790 (1984), applies only for intentional torts, not torts sounding in negligence. *See Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) ("Because plaintiffs' claims sound in intentional tort, we evaluate specific jurisdiction using the 'effects test' set forth in *Calder v. Jones*[.]") In Missouri, legal malpractice is a cause of action sounding in negligence. *See, e.g. SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, 494 S.W.3d 537, 545 (Mo. Ct. App. 2016) ("It is well-settled in Missouri that a plaintiff alleging legal malpractice has the burden of proving the existence of an attorney-client relationship, negligence by the attorney, proximate causation of plaintiff's damages, and damages.") (Citation omitted).

Jersey in connecting with a New Jersey transaction) (collecting cases). Plaintiff presents no facts Attorney Busch "practiced law" in Missouri in a meaningful way other than attending two meetings at the office of Trustees' counsel (that occurred before the allegedly erroneous advice and legal representation occurred and at which Plaintiff alleges Attorney Bush was told about the no-contest provisions themselves) and communicating (from Kansas) with a Missouri-based legal expert. Plaintiff's legal malpractice claim does not sufficiently relate to the two meetings in Kansas City for the exercise of specific personal jurisdiction, though. Plaintiff's claim does not allege Attorney Busch committed legal malpractice or negligence in representing Mr. Logan at these two meetings. Plaintiff's legal malpractice action charges Attorney Busch with negligence in filing the Kansas Lawsuit without testing it against the no-contest provisions and in advising Mr. Logan the Kansas Lawsuit would not violate the no-contest provisions, neither of which occurred at or in the context of these two meetings. Simply, these contacts in the context of this case do not provide sufficient minimum contacts, even considering Attorney Busch is otherwise licensed in the State of Missouri and communicated with a Missouri-based legal expert, to find the exercise of personal jurisdiction of Missouri comports with due process. In other words, advising Mr. Logan in the context of the Kansas legal action whether the no-contest provisions would be implicated (an issue of Missouri law) does not add to the sufficiency of the contacts. *Cf. McDevitt v. Guenther*, No. 06-00216 ACK/BMK, 2006 WL 2092385, at * (D. Haw. July 25, 2006) (holding out-of-state attorney subject to personal jurisdiction in Hawaii when the attorney contracted with plaintiff, a Hawaii resident, to provide legal advice to and draft a contract under Hawaii law and the attorney faxed the contract to plaintiff in Hawaii).

Attorney Busch's advice and legal representation to Mr. Logan as to issues of Missouri law do not add to a finding of sufficient minimum contacts, either. Plaintiff provides no support for its argument, to the extent it is made here, that legal analysis, consideration, and professional advice as to Missouri law provides the sort of "fair warning that [the lawyer's] activities may result in [their] being haled into court in [Missouri]" and that by undertaking those activities, the lawyer has purposefully availed himself of Missouri's laws. Specific jurisdiction requires some affirmative connection between the forum state, the out-of-state defendant, and the cause of action before the Court. If direct communication to a Missouri resident through telephone or email is not sufficient, neither is advising a Kansas resident within Kansas on issues of Missouri law even considering all the other factors.

Specific jurisdiction rests on a finding, under due process, that one's "*activities* may result in his being haled into court in a particular jurisdiction" and that the defendant has "invoke[e]d the benefits and protections of that jurisdiction by purposefully availing himself of the privilege of conducting *those activities*." *Porter*, 293 F.3d at 1076 (emphasis added) (citation omitted). Considering the nature, quality, and quantity of Attorney Busch's contacts with Missouri in the context of Plaintiff's legal malpractice cause of action, necessarily a fact-specific inquiry, the Court does not find Missouri courts can exercise personal jurisdiction as to Attorney Busch consistent with due process.

## II. Improper Venue

Alternatively, Defendants move the Court to dismiss the action for improper venue pursuant to 28 U.S.C. §§ 1391(b) and 1406. Section 1391 provides the venue rules for civil actions, generally, and § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As Plaintiff points out, however, Defendants removed the case to this Court from Missouri state court. As a removal action, 28 U.S.C. § 1441(a) establishes the proper venue, not § 1391(b). *See Schoberlein v. Westrux Int'l, Inc.*, No. 2:13-CV-04079, 2013 WL 12155465, at *2 (W.D. Mo. June 18, 2013). Under § 1441(a), the proper venue for civil actions removed to federal court is the "district court of the United States for the district and division embracing the place where such action is pending." Before removal, the underlying state court action was pending in the Jackson County Circuit Court, which is embraced by this Court sitting in the Western District of Missouri. Thus, venue is "proper" in this Court in this removal case. Because venue is not improper in this case, § 1406 – that provides for the dismissal and transfer of a case "laying venue in the wrong division or district" – does not apply. *See also Reyna v. Shoop*, No. 08-6057-CV-SJ-FJG, 2008 WL 4601718, at *3 (W.D. Mo. Oct. 15, 2008) ("if venue is improper in the district in which the case was brought, the appropriate vehicle to transfer a case is 28 U.S.C. § 1406(a)"). Thus, venue in this district and division is not improper and Defendants' motion to dismiss for improper venue is **DENIED**.

## III. Failure to State a Claim as Time-Barred

Finally, Defendants argue Plaintiff has failed to state a claim because its legal malpractice claim is time-barred by the applicable statute of limitations.

"A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred." *Hartig Drug Co. v. Ferrellgas Partners, L.P. (In re Pre-Filled Propane Tank Antitrust Litig.)*, 860 F.3d 1059, 1063 (8th Cir. 2017) (citations omitted); *accord White v. CTX Mortg., LLC*, No. 13-0335-CV-W-DGK, 2014 WL 1806705, at *2 (W.D. Mo. May 7, 2014) ("In considering a 12(b)(6) motion based on the running of a statute of limitations, the court may only grant the motion if it is clear from the face of the complaint that the cause of action is time-barred.") (citing *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011)). In the context of a motion to dismiss, the Court "accept[s] the well-pled allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 821 (8th Cir. 2018).

When a federal court exercises diversity jurisdiction, it must "appl[y] the statute of limitations rules of the forum." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 992 (8th Cir. 2007) (citation omitted). Generally, Missouri law provides for a five-year statute of limitations for legal malpractice claims. *Wilson v. Lodwick*, 96 S.W.3d 879, 882 (Mo. Ct. App. 2002) (citing Mo. Rev. Stat. § 516.120) (other citation omitted). Missouri law also includes, however, a borrowing statute, § 516.190, that provides: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." As used in this statute, "originated" means "accrued." *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 620 (Mo. Ct. App. 2006) (citing *Thompson v. Crawford*, 833 S.W.2d 868, 871 (Mo. banc 1992)). As the Missouri Court of Appeals has explained:

> Section 516.100 states in relevant part: "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment . . . "
>
> Because a cause of action originates where it accrues, § 516.100 not only determines *when* a cause of action accrues but *where* it accrues for purposes of determining whether the borrowing statute operates to bar an action.
>
> Accordingly, a cause of action accrues, and "originates" for purposes of § 516.190, when and where the damage "is sustained and is capable of ascertainment."

*Wright v. Campbell*, 277 S.W.3d 771, 774 (Mo. Ct. App. 2009) (citations and internal quotation marks omitted). Stated differently, a cause accrues or originates "where and when the final

significant event that is essential to a suable claim occurs." *Alvarado v. H&R Block, Inc.*, 24 S.W.3d 236, 242 (Mo. Ct. App. 2000) (collecting cases). This test means "a cause of action accrues when an injury is complete as a legal injury," that is, "when the plaintiff could have successfully maintained the action." *Id.* Finally, Missouri courts have held that this test does not require actual knowledge of an injury or wrongful conduct by the plaintiff and is satisfied at the moment the damage *could* have been discovered or made known. *Id.* (citing *Harris-Laboy v. Blessing Hosp., Inc.*, 972 S.W.2d 522, 524 (Mo. Ct. App. 1998)). In *Alvarado*, for instance, the Missouri Court of Appeals held that the "final significant event" after which the plaintiffs accrued a claim for accounting malpractice was when they received IRS notices containing assessed penalties by the IRS concerning the preparation of their tax returns. *Id.* Noting that § 516.100 also governs where a cause of action accrues, the court held that because the plaintiffs received these notices while residing in California, California's statute of limitations applied. *Id.*

Unlike Missouri, Kansas law provides for a two-year statute of limitations period for legal malpractice claims. *See Garcia v. Ball*, 363 P.3d 399, 408 (Kan. 2015) (citing K.S.A. § 60-513(a)(4)).

Plaintiff argues the legal malpractice cause of action accrued or originated on May 18, 2018, when the Kansas state district court issued its judgment in the declaratory judgment action brought against Mr. Logan by the Trustees. Because Mr. Logan was living in Missouri by that time, Plaintiff argues, Missouri's five-year statute of limitations applies, and its claim is not time-barred. On the other hand, Defendants argue the legal malpractice action accrued earlier: at the latest when the Trustees *filed* the declaratory judgment action against Mr. Logan in the Kansas state district court. In sum, if Plaintiff's cause of action originated or accrued while Plaintiff was in Kansas (some unknown time prior to the Kansas state court's declaratory judgment ruling), the cause of action is time-barred unless the statutory period is otherwise tolled under Kansas' statute of limitations law. If, however, Plaintiff's cause of action originated or accrued no earlier than May 18, 2018, Missouri's five-year statute of limitations applies and the action is not time-barred.

At this stage, the Court need not determine whether Plaintiff's cause of action originated on May 18, 2018, or earlier. Even if Defendants are correct that Plaintiff's claim for legal malpractice accrued or originated at an earlier time, there is nothing in the Amended Complaint that establishes where Mr. Logan resided at the specific time in question (whether in Kansas or Missouri). The Amended Complaint alleges only that "[a]fter the [Kansas] Lawsuit was dismissed,

the Trustees, under a duty to carry out the grantor's intent and enforce the terms of the Trusts, filed a Declaratory Judgment Lawsuit . . . seeking a declaration that the [Kansas] Lawsuit had violated the No-Contest Provision in the Missouri Trusts." The Amended Complaint alleges, "At the time of the Court's ruling in the Declaratory Judgement Action, Mr. Logan lived in Missouri."

"As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Joyce*, 635 F.3d at 367 (citation and internal quotation marks omitted); *see Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004); *see also Zaccarello v. Medtronic, Inc.*, 389 F. Supp. 3d 1061, 1072 (W.D. Mo. 2014) (denying Rule 12(b)(6) motion to dismiss based on running of statute of limitations where the allegations contained in the complaint failed to demonstrate the claim was time-barred).

Because the Amended Complaint itself does not establish the claim is time-barred, at this early stage, Defendants are not entitled at this time to dismissal under Rule 12(b)(6) under a statute-of-limitations defense

## IV. Transfer Pursuant to 28 U.S.C. § 1404(a)

Having concluded the Court lacks personal jurisdiction over Attorney Busch and that Defendants are not otherwise entitled to dismissal of this case at this early stage based on the statute of limitations or for improper venue, the Court *sua sponte* considers whether this case should be transferred to the District of Kansas pursuant to 28 U.S.C. § 1404.

Under § 1404(a), the Court may transfer any civil action to any other district where it might have been brought to promote the convenience of parties and witnesses and the interests of justice. In considering whether to transfer a case under § 1404(a), the Eighth Circuit has instructed district courts should consider: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice," in addition to "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (citations omitted). Under the interests of justice prong, courts consider: judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law. *Id.* at 696; *Matthews v. BNSF Ry. Co.*, 2016 WL 7404716, at *1 (W.D. Mo. Dec. 21, 2016). Courts must also consider relevant unenumerated factors. *Id.* at 691. The purpose of the statute

is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *VanDusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).  The ultimate transfer decision should be based on the totality of the circumstances.  *Terra Int'l, Inc.*, 119 F.3d at 691.

Courts have long held in this district a case may be transferred pursuant to § 1404(a) even when the Court lacks personal jurisdiction over a defendant.  *See Conrad v. Mo. Walnut Grp., LLC*,  No. 4:18-cv-00716-NKL, 2019 WL 3554719, at *3 (W.D. Mo. Aug. 5, 2019) (collecting cases where courts in this district "have found transfer under Section 1404 appropriate where personal jurisdiction over a defendant was lacking"); *Empire Gas Corp. v. True Value Gas of Fla., Inc.*, 702 F. Supp. 783, 784-85 & 785 n.4 (W.D. Mo. 1989).  And the Court may do so *sua sponte*. *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 972 (8th Cir. 2012) ("There is authority supporting the district court's ability to *sua sponte* transfer a case under § 1404(a)) (citing *I-T-E Circ. Breaker Co. v. Becker*, 343 F.2d 361, 363 (8th Cir. 1965) (other citations omitted); *McClain v. Wal-Mart/Sam's Club*, No. 4:20-CV-1607 RLW, 2020 WL 7024211, at *1 (E.D. Mo. Nov. 30, 2020); *Clark v. Transamerica Life Ins. Co.*, No. 4:09-CV-00877 GTE, 2010 WL 2899377, at *3 (E.D. Ark. June 18, 2010).

First, the Court considers whether this case "might have been brought" in the District of Kansas.  In the Amended Complaint, Plaintiff alleged federal jurisdiction was proper under 28 U.S.C. § 1332(a)(1) – diversity jurisdiction.  Plaintiff is a resident of Missouri for diversity purposes (where Mr. Logan resided at the time he died) and Defendants are both residents of Kansas.  This legal malpractice lawsuit also appears to satisfy the amount-in-controversy requirement for diversity jurisdiction, where the damages Mr. Logan suffered from the alleged malpractice concerns, as alleged in the Amended Complaint, forfeiture of "his status as a beneficiary of Trusts containing millions of dollars of assets."  Finally, venue would be proper in the District of Kansas.  28 U.S.C. § 1391(b)(1) provides venue is proper in "a judicial district in which any defendant resides, [i]f all defendants are residents of the State in which the district is located."  As both Attorney Busch and the Firm appear to be residents of Kansas, the United States District Court for the District of Kansas would be a proper venue where this action "might have been brought."

23

Second, the Court must consider the enumerated factors under § 1404(a) and relevant unenumerated factors including: the convenience of the parties and of the witnesses, the interests of justice, judicial economy, plaintiff's choice of forum, any conflict of law issues, and advantages of having a local court determine questions of local law, and any other relevant factors specific to this case. The Court hesitates to do so without arguments by the parties. Accordingly, as set forth below, the Court orders the parties provide supplemental briefing whether, as an alternative to dismissing Plaintiff's claims against Attorney Busch for lack of personal jurisdiction, this case should be transferred under § 1404(a) to the United States District Court for the District of Kansas.

## V. Conclusion

Accordingly, it is **ORDERED**:

(1)    the motion to dismiss for improper venue and failure to state a claim based on the statute of limitations is **DENIED**;

(2)    the motion to dismiss for lack of personal jurisdiction is **DENIED** as to Defendant the Firm and is otherwise **HELD** pending the parties' supplemental briefing regarding transfer under § 1404(a) in lieu of dismissal;

(4)    the parties shall file supplemental briefing as ordered above as follows:

- Defendant's brief shall be filed by December 20, 2021;
- Plaintiff's brief in response shall be filed by January 4, 2021; and
- Defendants' reply brief, if any, shall be filed by January 11, 2021; and

(5)    the motion to stay discovery (Doc. 12) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 6, 2021